IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WALTER W. KUCZERIAWENKO, | : |
| Plaintiff, | : CIVIL ACTION |
| v. | : NO. 21-410 |
| PATRIOT BUICK GMC, INC., *et al.*, | : |
| Defendants. | : |

## MEMORANDUM

**Tucker, J.**                                                                                                                                                                                   **July 14, 2022**

Before the Court is Defendants Patriot Buick GMC, Inc., Jason C. Owens, and John Landosca's Motion to Dismiss (ECF No. 14), Plaintiff's Response in Opposition (ECF No. 15), Defendants' Reply (ECF No. 20) and Plaintiff's Surreply (ECF No. 21). For the reasons set forth below, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiff brings this action for age and disability-based discrimination and failure to timely pay earned compensation against his former employer, Patriot Buick GMC, Inc. ("Patriot"), and its employees—Jason C. Owens and John Landosca. At the time of Plaintiff's termination, Owens was the owner and president of Patriot, while Landosca was Patriot's sales manager and Plaintiff's direct supervisor. Pl. Am. Compl. ¶ 9, ECF No. 13.

### A.  Owens and the "Getting Younger" Program

Patriot and Owens allegedly began targeting Plaintiff in 2017 as part of an initiative to "make changes with [the] older staff"; these "changes" included marking Plaintiff for termination due to his age. *Id.* at ¶ 20. Patriot started by hiring Jim Barndt as its general sales

manager. *Id.* at ¶ 19. While Plaintiff had an arrangement with Patriot to be seated near the front of the showroom (to accommodate his arthritic back and knees), Barndt intentionally moved him to the rear corner while allowing younger salespeople to remain visible in the front. *Id.* at ¶ 21. Barndt also repeatedly stated that Patriot needed to get younger staff and rid itself of the "older dead wood." *Id.* at ¶ 23. To that end, Barndt singled out older salespeople and fired two seasoned staff members due to their inability to fit the "getting younger" program. *Id.*

Despite Landosca replacing Barndt by the end of 2017, the age discrimination allegedly continued. When Plaintiff petitioned Landosca to accommodate his arthritis, Landosca refused and explained that it was "Jason [Owens]'s decision. *Id.* at ¶ 26. Owens also began attending sales meetings with Landosca, and both consistently emphasized the "getting younger" program, largely by characterizing the older salespeople as "dead weight." *Id.* at ¶ 27. Owens in particular repeatedly threatened to terminate older sales personnel (including Plaintiff) if they were unable to keep up with the younger workers. *Id.* By 2018, Plaintiff needed both knees replaced; his physicians noted he would need to cut back on his work hours because he would be unable to walk or stand for long periods. *Id.* at ¶¶ 28-29. In response, Plaintiff once again asked Landosca for accommodations—Landosca initially allowed him to sit on a barstool near the front of the showroom, but then intentionally removed the barstool "under 'Jason [Owens]'s orders.'" *Id.* at ¶ 30. Further, almost every comment Landosca made about keeping up with the younger staff was accompanied by him also stating that these actions were being taken pursuant to Owens' directives. *Id.*

### B. Landosca's Alleged Discriminatory Behavior

Plaintiff avers that Landosca also directly discriminated against him on multiple occasions. While refusing to accommodate Plaintiff's arthritis, Landosca told Plaintiff to quit

because he was too old and unable to keep up with his younger colleagues, specifically stating that if he "could not keep up with the big dogs, then don't get off the porch." *Id*. at ¶ 31. This behavior continued even after Plaintiff presented the medical note outlining his need for a double knee replacement and a reduction of his work hours. *Id*. at ¶ 32. During this time, Landosca also fired multiple older employees, replacing them with three people in their 20s. *Id*. Landosca then allegedly impacted Plaintiff's income stream by removing him from the CRM, a system that allowed sales personnel to find new customer leads using the internet. *Id.* at ¶ 33. Such leads were instead handed over to his favored employees, who were generally the younger salespeople at the dealership. *Id.*  By August 2019, Plaintiff asked Landosca for permission to schedule his knee replacement surgery nearly every day, but Landosca did not respond. *Id.* at ¶ 35. This continued until October 10, 2019, when Plaintiff told Landosca he was in such unbearable pain that he could no longer work or continue to stand without having his knees replaced and as such was going to schedule the surgery. *Id.* at ¶ 36. Four days later, Landosca fired him without warning and replaced him with a young woman. *Id.*

### C.  The Current Action

Plaintiff sued Defendants on January 29, 2021 for discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff also sued Defendants for violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"). Defendants filed a Motion for Partial Judgment on the Pleadings, which this Court granted. The Court dismissed Plaintiff's ADA and ADEA claims with prejudice, but only as to Defendants Owens and Landosca. Further, the Court dismissed Plaintiff's PHRA claim without prejudice as to

Defendants Owens and Landosca; Plaintiff was permitted to file an Amended Complaint. *See* ECF No. 12.

Plaintiff filed an Amended Complaint on September 24, 2021. ECF No. 13. Defendants filed a Partial Motion to Dismiss in response, asserting that: (1) Plaintiff's PHRA claims against Defendants Owens and Landosca must again be dismissed; and (2) Plaintiff's WPCL claim must be dismissed in its entirety. ECF No. 14.  The Court disagrees.

**II. STANDARD OF REVIEW**

The purpose of a Rule 12(b)(6) Motion to Dismiss is to test the sufficiency of pleadings. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

Applying the *Iqbal* and *Twombly* principles, the Third Circuit decided *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010), in which it set forth a three-part test that district courts must apply when evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  A court must: (1) identify the elements of the claim; (2) review the complaint

to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  If the complaint fails to do so, the motion to dismiss will be granted.

### III. DISCUSSION

#### A.  PHRA Claims Against Owens and Landosca

The PHRA provides that it is unlawful "[f]or any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Stat. Ann. § 955(e). For an individual to be found liable for violating the PHRA under an aiding and abetting theory, they must be "a supervisory employee who engages in discriminatory conduct while acting in the scope of his employment." *Glickstein v. Neshaminy School Dist.*, Civ. A. No. 96-6236, 1997 WL 660636, at *12 (E.D. Pa. Oct. 22, 1997). Here, Defendants contend that Plaintiff inadequately alleges a claim of aiding and abetting under the PHRA against Defendants Owens and Landosca, but this is plainly false. At this early stage of litigation, Plaintiff sufficiently pleads facts raising a reasonable expectation that discovery may reveal evidence indicating that Defendants Owens and Landosca aided and abetted Plaintiff's alleged discrimination.

#### i.  Jason C. Owens' Actions

At the outset, the Court notes that PHRA liability may extend to Owens, even in his capacity as owner and president of Patriot. *See* 43 Pa. Stat. Ann. § 954(a) ("the term 'person'…includes, but is not limited to, any *owner*…") (emphasis added). Because he holds the most senior management position at Patriot, Owens "exert[s] unfettered decision-making authority on behalf of the company," which renders his individual intent and purpose

synonymous with the intent and purpose of the corporation. *Santai v. Fred Beans Ford, Inc.*, Civ. A. No. 10-2367, 2011 WL 3606836, at *4 (E.D. Pa Aug. 16, 2011). According to the Amended Complaint, Owens was behind Patriot's "getting younger" initiative and apparently did not oppose Landosca and Barndt consistently replacing older employees with new, younger counterparts. Owens also repeatedly made comments about older employees being "dead weight" to the company and directly threatened several of them, including Plaintiff, with termination if they were unable to "keep up with the younger salespeople." Additionally, Landosca justified nearly every discriminatory act he made towards Plaintiff as being part of "Jason [Owens]'s orders."

Plaintiff pleads that Owens exhibited a pattern of behavior evincing favoritism towards younger employees, to the point of causing material harm to older employees. As such, he has alleged enough facts to survive a motion to dismiss as it pertains to Defendant Owens' potential PHRA liability.

### ii. John Landosca's Actions

According to Defendants, "case law in this Circuit is unclear as to whether § 955(e) prohibits direct acts of discrimination by an individual supervisory employee." Mot. to Dismiss 7, ECF No. 14. However, even if the Court determined that direct acts of discrimination by a supervisory employee are excluded under § 955(e), Defendants still cannot overcome the fact that the Amended Complaint contains allegations indicating that Landosca—as Plaintiff's supervisor—may have aided and abetted his discrimination. Plaintiff points to several interactions and statements that may indicate collaboration between Landosca and his employer. First, in the aforementioned sales meetings, Landosca joined Owens in emphasizing the company's "getting younger program" and characterizing the older salespeople as "dead

weight." Plaintiff asserts that such views materialized, as Landosca allegedly had an established pattern of replacing older, terminated employees (eventually including Plaintiff) with young people in their 20s. Finally, it bears emphasis that whenever Landosca made discriminatory comments, refused to accommodate Plaintiff, or intentionally deprived him of some accommodation (e.g., removing the barstool), he nearly always said he was doing so "under Jason [Owen]'s orders." Pl. Am. Compl. ¶ 30, ECF No. 13. These facts alone are sufficient to state a claim of aiding and abetting under the PHRA.

Accordingly, Defendants' Motion to Dismiss Plaintiff's PHRA claims against Defendants Owens and Landosca is denied.

### B. The WPCL Claims

The WPCL provides a statutory remedy for employees to receive earned wages and compensation when an employer breaches their contractual obligation to pay the entitled earnings. *Gordon v. Maxim Healthcare Services, Inc.*, 2014 WL 3438007, at *3 (E.D. Pa. Jul. 25, 2014). To succeed on a WPCL claim, a plaintiff must show that he was contractually entitled to certain wages that he never received. *Hoelzle v. Vensure Employer Services, Inc.*, 2022 WL 507481, at *9 (E.D. Pa. Feb. 18, 2022). Wages include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation." 43 Pa. Stat. Ann. § 260.2a. The Court concludes that Plaintiff's Amended Complaint sufficiently pleads facts allowing for some of his WPCL claims to survive Defendants' Motion to Dismiss.

Defendants claim that Plaintiff pled no facts showing the existence of a contract, whether written or oral, entitling him to his sought-after compensation. Considering the Amended Complaint's allegations, this argument is meritless. An implied oral contract occurs "when parties agree on the obligation to be incurred, but their intention…is inferred from the

relationship between the parties and their conduct in light of the surrounding circumstances." *Oxner v. Cliveden Nursing & Rehab. Ctr. PA, L.P.*, 132 F.Supp.3d 645, 649 (E.D. Pa. 2015). This includes scenarios where "one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *Id.* Plaintiff, as a salesman with Patriot for over six years, has clearly performed such a useful service, of which Patriot availed itself. The Amended Complaint contains enough facts to reasonably infer the existence of an implied oral contract.

However, even with the presence of an implied oral contract, Plaintiff is not entitled to all relief that he desires. The WPCL "merely establishes a right to enforce payment of wages and compensation that the employer has legally obligated itself to pay," and in cases involving an implied oral contract, that obligation is dependent upon the promises or implications provided by one's employer. *Scully v. US WATS, Inc.*, 238 F.3d 497, 516-517 (3d. Cir. 2001). Here, such obligations at least include the 25 hours of wages and unpaid commissions earned by Plaintiff prior to his termination. But it appears that Plaintiff also seeks compensation for unused vacation time (i.e., Paid Time Off ("PTO")) and for all hours worked over 40 hours during an established work week. PTO is expressly covered by the WPCL, but without a specific agreement or implication that accrued vacation days were compensable, Plaintiff's claim to such payment fails. *See Doe v. Kohn, Nast, & Graf, P.C.*, 862 F.Supp. 1310, 1326 (E.D. Pa. 1994) (holding that vacation time was not owed to Plaintiff because the vacation clause was nonspecific on how much vacation time employees were entitled to). As to compensation for hours worked beyond 40 hours per week, Plaintiff's claim cannot move forward, as he has not alleged that the extra hours worked were done at his employer's behest. *See Oxner*, 132 F.Supp.3d at 649 ("If Oxner's supervisors specifically instructed her to work additional hours…Oxner would therefore be

8

justified in entertaining a reasonable expectation of being compensated…for her additional work at her set hourly wage."). Therefore, Defendant's motion to dismiss Plaintiff's WPCL claim is granted as to Plaintiff's claims for PTO and additional/overtime wage compensation, but is otherwise denied.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's claims under the Pennsylvania Human Relations Act and the Pennsylvania Wage Payments and Collection Act is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims under the WPCL for unused vacation time and additional/overtime wage compensation are **DISMISSED WITH PREJUDICE**. Defendants' Motion is otherwise **DENIED**

An appropriate Order follows.